161243 MPHJ Technology Investments v. Ricoh Americas Corporation Mr. Ganji. May it please the Court. The appellants have filed an appeal to challenge the findings in a board final written decision. In the briefs, the appellants identified a number of flaws. Here I'd like to discuss two of those flaws in the final written decision. Those are the go button requirement of Claim 1 and the interfacing requirement of Claim 4. With respect to the go button requirement of Claim 1, Claim 1 requires a go button and there's two components to this go button. The first is a scanner that's capable of rendering an image in response to a selection of a go button. The second component is that in response to the same selection of that go button, that image is transmitted to one of a plurality of external destinations. The claims further require a system that's capable of having an email application software as a destination. So the go button limitation requires a single selection where an image is rendered by a scanner and then transmitted to an external destination where one of those external destinations is email application software. That particular limitation is not found in the prior art. Which one? The go button requirement of scanning or a scanner that renders an image and then in response to that same selection, that image being transmitted to an external destination that's email application software. Okay, so you feel that you have to establish both of those facts. One, that it's automatic or a single step and second, that it's email. That's right. And we know that because the claims do require, it claims a protocol using a particular protocol when the destination is email application software. But when is conditional? When is conditional. It's not required. Well, we disagree with that. We believe that a conditional requirement must be found in the prior art. The prior art has to teach that condition. The meeting of the condition is something that's necessary in the prior art, but the prior art can, the condition does not have to be triggered in the prior art, but the prior art system has to be able to handle that condition. And that condition is using a particular set of protocols when that destination is email application software. So in order to invalidate the patent, that particular condition has to be shown in the prior art. I'll note that in the underlying case, the email application software was something that was given patentable weight by the board, by the appellees and by the appellant as well. So it's only now that we hear this conditional requirement argument on appeal. I'd also like to distinguish it from an optional claim limitation as opposed to a conditional claim limitation. An optional claim limitation is something that is not given patentable weight because it's merely just an option. But a conditional limitation should be given patentable weight. The appellant cites to the Liberty National Life Insurance case that held that a term that says even if, which is a conditional term, is given patentable weight in the context of infringement. And there an infringing device was found, or a device accused for infringement was not found to be infringing because it did not embody that conditional requirement. So now the prior art, there are two pieces of prior art that were primary references. One is XNS, the other is Harkins. And the appellant doesn't disagree with the factual findings of this prior art. In XNS, there is a scanner called the GIS 150. It's a scanner from the 1980s that was produced by Xerox. And this scanner is capable of only transmitting to a file server and a print server and nothing else. And that's clear in the record. And that's something that the board relied upon. So this particular scanner that was used to invalidate the patent cannot transmit to email application software. The XNS reference also over email, but that's a completely separate transaction that's not tied to the scanner. So in order to move a document from a scanner to the email software application, a user must scan it, manually manipulate it, move it around, and eventually get it to that email application software. And that's a multi-step process. So you're saying that XNS ultimately teaches sending something over email but not teaches it as a destination in response to the Go button. That's right. So the claims are limited to a single Go button selection. And what the prior art teaches is a multi-step process where scanning is done on one end, and then later on there's document distribution using email application software on the other end. But there's no link between the two. And sure, a user can manually manipulate the system to scan a document and move it to the email application software, but that requires manual intervention. And that's exactly the problem that the patentee was trying to avoid. The patentee came up with a virtual copier interface to link different destinations and different input sources together so that all the user has to do is hit a single Go button and it can copy directly from a scanner-type device to email application software. So, that's XNS. Harkins is similar to XNS in that respect. Harkins describes something called a digital suitcase that holds files. It's a repository for files. And users can drag and drop files out of that digital suitcase into any channel that they want. And one of those channels is an email application software. But Harkins doesn't talk about how the documents get into that digital briefcase. And one can presume that a scanner might have scanned a document and a user might have dragged and dropped it into the briefcase. But again, this is manual intervention of dragging and dropping, of moving documents around. This is not the single selection of a Go button that's being claimed. Well, couldn't the dragging and dropping, if that then is automatic from that point forward, couldn't that effectively be a Go button? We disagree with that. And that is a position the board took. The reason we disagree with that is that the Go button selection implicates the scanner peripheral. In response to a selection of the Go button, the scanner renders the image. So, if you're just dragging and dropping from a file repository to an email application, that has nothing to do with the scanner. A So, for that reason, Harkins doesn't anticipate the single Go button selection. There's also another obvious misground that was alleged. It's an obvious, it was ground three where the Apple E brought in a third reference called Motoyama. But Motoyama was brought in for a very small, limited, specific purpose of addressing protocols being stored in memory. Motoyama was not used to cure the deficiencies of this anticipation argument with respect to Go button. So, for those reasons, it's... If XNS, though, does show a single-step process, you just say it doesn't show a single-step process to email. That's right. It shows a single-step process for scanning it to a file server and print server. But that's it. In order to anticipate, it has to be able to scan it to an email software application. And this is evidence that at the time, or prior to the time of invention, commercialized scanners weren't able to do this. And that's exactly what the prior art teaches, that a scanner can only send to destination devices that are print servers and file servers. Now, moving on to the Claim 4, which requires interfacing. Claim 4 requires interfacing a scanner to email software application. And interfacing is not an abstract concept here. It's used in the context of the software arts. In the preceding claim element, 4C, the claim requires a communicative link between the scanner and the email software application using a protocol. So here, we're talking about two endpoint devices, one talking to the other. There's communication passing between these two endpoints. And that's interfacing. Interfacing means that there's a shared boundary between these two things. What the board did is they construed interfacing to be so broad that it encompasses a manual intervention of dragging and dropping of moving documents around. But when you see dragging and dropping and moving documents around in the prior art, that's actually proof that there's no interfacing between the scanner and the email software application. Doing away with the manual intervention, as I understand it, your primary argument is that there was a disallow of manual intervention in the prosecution history, right? That's right. And it's not absolutely clear from the specification that manual intervention is disallowed, but you rely on the prosecution history to get there. Well, not the prosecution history, and I've clarified that, the provisional application, which is incorporated in reference to the 173's patent. It's actually the provisional application, and I'll refer to Appendix 1819, where the inventor himself said that the manual drag and drop is a problem in the prior art. My solution is an interface to avoid that, to allow copying directly in one single step from a scanner to a destination application. That's what the inventor came up with. And his characterization of the prior art is similar to what the prior art is of record here, which is this manual drag and drop of moving two things, moving a document from one source to another. Clearly our standards for disavowal are high. And why do you think this language satisfies those standards? It's because the inventor himself characterized the prior art. He explained what the prior art was, he referred to a prior art product, one which is Xerox as well, he explained the deficiencies of that prior art, which is the manual intervention, and then he said why his invention is different from that. When you lay it out like that, the inventor is free to describe what his innovation is as a public disclosure. He's using the prior art to set himself apart from that. So it would be improper to read in the prior art that he characterized into the very claims that he's trying to use to describe what his invention is. All right, if we agree with you that the board misconstrued the go button, should we remand for the board to consider obviousness or anticipation in light of the proper claim construction? Or do you think there's only one clear result? There's only one clear result, and that's because the factual findings have already been determined. The board has found that XNS and Harkins are a multi-step process. There's nothing else to consider. If the board is to agree that the go button is a single selection that allows scanning and transmitting the document to the destination in one step, based on the facts already determined by the board, the prior art doesn't anticipate that. Didn't the board say at page 25, the evidence produced shows and patent owner acknowledges that XNS discloses scanning and distribution of documents two steps? That's right. This is the multi-step process that's part of the prior art. So that's known in the prior art, but that's not what's being claimed. What's being claimed is a single go button selection. And the board, there is antecedent basis between these two go button selections, and the board decided to separate and break those out into two different steps in order to justify its opinion. Okay, thank you. Thank you. We'll save you a better time, Mr. Gandy. Mr. Wright. Thank you, Your Honor. John Wright on behalf of RICO, Xerox, and Lexmark, and may it please the court. Neither independent claim requires the single-step scan-to-email embodiment that MPHJ must read into its claims to save the 173 patent. Here, the patentee chose to claim broadly, and to read such a specific embodiment into the claims violates the bedrock principle that it's the claims that define the scope of the invention, and the well-settled principle of claim construction that we do not read into broadly drafted claims very specific embodiments from the specification. One of the things I didn't really follow from your brief was your argument that whatever happened in the provisional application and whatever was ever asserted there is meaningless because it didn't show up in the spec. I don't really follow that. No. Prosecution history is prosecution history. It is not meaningless for sure. It is certainly incorporated by reference, but to suggest that the public notice function of the patent document is select. First of all, to call single-step scan-to-email embodiment of the invention is charitable because you don't see that in the provisional application either. You don't see email, for instance, but to suggest that you can select a very high-level statement that the somehow defines the invention here and should be read into the claims when the claims unambiguously do not require that embodiment, I think, is error. I didn't mean to suggest that the provisional is not relevant to construing the claims. All right. That was the suggestion I took from your brief. It is true that the language is strong in the provisional application that says that it is disclaiming the two-step process or at least claiming something better than a two-step process. Not with respect to email. I think what would benefit the panel here is to walk very carefully through claim one and see what claim one actually requires because I think when we do that in view of X and S, we'll see that X and S anticipates. When you look at the first place where the Go button appears, first of all, claim one is a system claim. There's no step that says scan. It just says you need a network-addressable scanner or digital copier or a multifunction peripheral that's capable of rendering at least one of an image, a graphic, or a document in response to a selection of the Go button. The second place where the Go button appears is in the where-in clause. Right now I'm on appendix page 130, column 86 of the patent. That's where claim one is reproduced. When you look at the where-in clause where the Go button appears the second time, it starts at roughly line 44. It says that in response to the selection of said Go button, an electronic document management system, that's X and S, integrates at least one of the image, the graphic, or the document so that the image, graphic, or document, and this is important, gets seamlessly replicated and transmitted to at least one of said plurality of external destinations. One of those external destinations, if we go to the preamble, is a local file. In X and S, and there's no dispute to this MPHJ concedes it, X and S unambiguously has a scanner, a network scanner, that in response to a start button scans the document and puts it into a local file, and that is all claim one requires. Now let's look where claim one talks about email, and where I'm looking in the appendix for what X and S does, I think the clearest place perhaps is at appendix 520. It says that the digitized image that the graphics input model may be sent to a specified file in a file service for storage or to a print service for printing. That is using the Go button on the XIS or the GIS scanner and scanning it to a local file, and that is all claim one requires. Now let's turn to the email limitation. All that says is that there is that where in one of said, so the plurality of interface protocols is in the processor limitation that's just above it. I'm back to the patent at column 86 at line 22. There's a processor that's connected to the memory that implements a plurality of interface protocols as a software application for interfacing and communicating with the plurality of external destinations, and then the email comes in the next clause. It says wherein one of said plurality of interface protocols is employed when one of said external destinations is email application software. That's it, and X and S has as a destination email application software. You can take... But it seems like we're skipping a step here, so that the claim one says that it's an external destination that the Go button sends you to. One of said plurality of external destinations, which unambiguously is a local file. Right in the preamble, it says one or more external destinations. I'm at line 11 in column 86. One of the plurality of external destinations, including one or more of external devices, local files, and applications, generically. So the wherein clause where we see the second occurrence of the Go button, all that requires is that the document gets seamlessly replicated and transmitted to at least one of said plurality of destinations, and that is to a local file. Unambiguously, X and S has that. There's no dispute, and that is all claim one requires. Now, when a destination is email, you use an interface protocol. That's not linked to... You don't need that. That's not a requirement of the wherein clause. So when you look at X and S, X and S has a plurality of interface protocols. Those are right at the top of appendix 423. You see X and S's software application layer, and it has protocols for printing, it has protocols for filing, protocols for mail, protocols for scanning. So then you would differentiate, though, would you not, whether or not X and S anticipates with respect to claim four, based on this very argument? Well, no. So claim four doesn't have the Go button. But you need to interface. Claim four has the limitation interfacing. That's right. So let's look at... Let's shift to claim four. There is a Go button in dependent claim six. It just says that wherein one or more steps occur in response to selection of the single Go button. So claim four has a number of steps, has a transmitting step, it has a rendering step, it has an interfacing step, communicatively linking, it has a transmitting step. And all that's required by the Go button, to the extent that it applies in helping us to interpret claim one and claim four, just requires one or more steps occurring in response to the Go button. But if we look at interfacing, and this was perhaps the confusion and the frustration with MPHJ's brief, is they seem to suggest that, oh, if you agree with us on Go button, we win. Or if you agree with us on interfacing, we win. But they need to win on just about every claim construction to win. They never describe the prior art or explain the impact of their claim constructions in view of the prior art. So turning to claim four... Well, the prior art doesn't show interfacing. It absolutely shows interfacing. But I'm saying if it doesn't, if I concluded or we concluded that it didn't, then analysis of claim four, even under your arguments, would be different than the analysis of claim one. The analysis is different because claim four does require email application software, requires interfacing to email application software. Okay. Not interfacing to, and this is my big concern here. It says interfacing between. Okay. And you seem to argue that the devices can interface with themselves. Let's, I think the best way to answer that question is to look at interfacing in the context of the Harkins reference. Okay. Okay. So let's look at Harkins. I think the best place to look is at page 18 of our red brief, because there's a version with color for figure one of Harkins. Right. And as I understand what you're saying, is that the document can both render and transmit. The same thing can render and transmit, right? Right. So where does that deal with the between language? Okay. I can explain that. If we look at figure one of Harkins, which is at appendix 840 or figure, or sorry, page 18 of our red brief.  It's sitting at the workstation. It's sitting at the printer. It's sitting at a second workstation. All those places in yellow. If you look at that interface in Harkins, I think figure nine is the best place. It's at appendix 848 to show what that interface looks like. You can stand at the scanner in Harkins, at the interface scanner in Harkins, page 848, appendix page 848. You can lay a report and you can hit the scan button and Harkins has, like XNS, a scan to local file and the report will go into the document suitcase in the upper left corner. Then standing right at the scanner in Harkins, you can take that report and you can slide it into Jane Roe's communication profile, for instance, or any of the communication profiles there. But doesn't this have to do with the user interface? That's not the same as the interfacing claim language. I think it is. MPHJ repeatedly points to the provisional application at appendix 820, where they allege that the provisional application expressly defines interface. What that says, and I'm reading from the bottom of 820, this patent should simply protect our interface and its ability to intuitively convey to the user the ability to copy without distinguishing between physical and electronic paper. That's right below the portion of the provisional application that they point to where it says... Yes, but I think don't they distinguish between user interface and the question of whether the with something else? I think that interfacing, as the board construed it, is simply... And their construction and application of interface has shifted throughout this entire proceeding and it has shifted on appeal. Interfacing is making a direct or indirect connection between two elements so they can work with each other to exchange information. Now MPHJ would say so they can directly work with each other or directly exchange information. That's their claim construction for interfacing. That's on, I think, on page 10. So what Harkins provides and what XMS also provides is an interface so that you can stand at a scanner or you can stand at a workstation or you can stand at a printer and you can directly communicate from that multifunction peripheral with email application software. All you have to do is access the document suitcase in the upper left hand portion of the interface in figure nine, drop the document into a communication profile, and if that profile has email, which it can, or a fax, which it can, or a printer, which it can, you're standing at the scanner. You have interfaced with an email application software through this common interface. And that's what the virtual interface is. So you're saying the multifunction peripheral and the interface and the email can be the same thing and they're still interfacing? I'm not sure I understand the question. What Harkins allows you to do and the best example of it in Harkins is you can stand at the scanner and you can send a document via email by simply taking the report that you've scanned and dropping it into a communication profile. Well, I don't dispute that you can do that. That still doesn't show that the multifunction peripheral is interfacing with the email application, that the two are interfacing between each other. How is it not interfacing between each other if I can stand at a scanner and drag the document that I just scanned, drop it, and send it via email? I don't understand how that is not interfacing with email application software. It's not interfacing between the two. That's the problem. That's my problem. So there is a separate step in Claim 4 of communicatively linking. There is another step in Claim 4 for transmitting. The interface that's described in the provisional application that MPHJ places so much weight on says the patent should protect our interface. This is what they're relying on for interfacing. So you're presupposing that the rendering and the transmission don't have to be in the same step. But they certainly don't in Claim 4. There's a rendering step and there is a transmission step. And Dependent Claim 6, which is an issue here, says there's a go button that can accomplish one or more of those steps. The very—so Claim 4 has a rendering step. Claim 4, that's step B. It has communicatively linking, which is step C. It has two interfacing steps. Then it says you can communicate, communicating over LAN and then transmitting a document to one of the external destinations. The very language that MPHJ repeatedly relies on to define interfacing, that portion of the provisional just talks about interface as a noun. You don't see the verb interfacing there. It just talks about at the bottom of 1820, this patent should simply protect our interface. And the interfacing step in Claim 4, that's met by Harkins. It's met by XNS as well. XNS has a common interface and that's what the virtual copier is an interface. The virtual copier, you select—this is at, I guess, figure 29 in the patent. You have your virtual copier interface. You select an open file, or you select a from file, you select a to file, and you hit go. Okay, can we move on? Yeah. Okay, I think we have the position. Thank you, Mr. Wright. Mr. Gandhi, we'll add a couple of minutes to Mr. Gandhi's rebuttal time. Proceed. Thank you. I'll start off with the interface. I'll work my way backwards to the go button. For the record, the appellant is not arguing that a user interface is the interface. The interface is achieved through protocols, and Claim 4 requires those protocols to be used to achieve an interface between an actual scanner device and email application software. So there has to be protocols used. So just a user interface that allows a user to move things around and manipulate a document — first of all, there's no evidence that protocols are used for that purpose. And second, that's really not interfacing the scanner itself to email software application. And in fact, it proves that there is no interface, because a user has to go in and manually do that. And to go back to the provisional application that we just discussed on 18—I believe it's 1820—this is an excerpt from the provisional application. It says, the imagine virtual copier interface. But this definition right here of the virtual copier interface is not describing the user interface. It's describing the user's experience once you achieve this interface, which is a communicative link between the scanner and the email software application. So again, the appellant's not relying on user interfaces to move documents around. In fact, a user interface is part of the—it does achieve the go button. So there is a user interface for the go button. But for actually linking the scanner to the email software application, that's interfacing those two things using a protocol to do that. Now, the second point is that in Claim 1, email application software is required by the claims. It's required as an external destination. And the only thing required by—the only aspect of an external destination, at the bare minimum, is that it has to be the thing that receives the document that's being transmitted. That's what qualifies it as an external destination. What we just heard is that an external destination may just happen to be in the claim system, but it doesn't do anything besides using protocols. But that's not true. The claims require—the purpose of this is to have an external destination that actually receives the thing that's being scanned or copied. And the claims require email software application to be an external destination as a condition, which does have patentable weight. Well, what—how do you respond to the argument that the external destination could be an email application, but you could have a local file in the interim? That's required—so a local file—and give me just a moment to flip through the claims so I can—so a local file is contemplated by the claims. But the claims system has to support an external destination that is email software application. So, yes, a local file is a requirement of the claims, but the claims go beyond that. The inquiry just doesn't end once you have a local file that's an external destination. Inquiry continues, and to where—to determine whether the prior art teaches the condition where the external destination is email application software. Finally, my last point is that— conditional application and optional application. Where do you—where do you get that difference in terms of our case law? The—so the conditional—an optional requirement, and that's a case cited by the appellee. And there is actually an optional limitation in Claim 1. It's at the very end. There is a claim requirement that states that the very last clause and is optionally printable by said printer. That's an optional limitation. That doesn't—we can see that has no patentable weight. But a conditional limitation does, and the case law to support that is the national—the even-if clause was considered an optional limitation. Okay. Any more questions? Thank you. Thank you both, Mr. Catty and Mr. Wright. The case is taken under submission.